J-S13001-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellee :
:
v. :
:
ROBERT BURKS :
:
Appellant : No. 725 WDA 2016

Appeal from the PCRA Order January 13, 2016
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0012434-2008

BEFORE: GANTMAN, P.J., SHOGAN, J., and MUSMANNO, J.

MEMORANDUM BY GANTMAN, P.J.: **FILED SEPTEMBER 19, 2018**

Appellant, Robert Burks, appeals from the order entered in the Allegheny County Court of Common Pleas, which denied his second petition filed under the Post Conviction Relief Act at 42 Pa.C.S.A. §§ 9541-9546. We affirm and grant counsel's petition to withdraw.

The PCRA court set forth the relevant facts and procedural history of this case as follows:

> On April 17, 2008, the victim, Darrel[1] Nelson, Jr., was at the apartment of Samuel Turner with Keith Sommerville. The victim was approached by Justin Boyd and [Appellant], both of whom had firearms and were firing at Nelson. Nelson was struck three times and was transported to Mercy Hospital where he later died of the gunshot wounds he sustained. Eric Boyd would provide testimony that Justin Boyd and [Appellant] were the shooters and also that he

---

[1] Mr. Nelson's first name is spelled in several different ways in the record as "Darrel," "Darrell," and "Darryl."

saw three other individuals who were not shooting, one of them was an individual by the name of Natale [Coaston]. Weeks after the shooting a gun was recovered from [Coaston] and the gun came back as one of the murder weapons.

(PCRA Court Opinion, filed September 29, 2017, at 4).[2] The court's opinion continues:

On October 31, 2008, [Appellant] was charged with the crimes of criminal homicide, possession of a firearm without a license and criminal conspiracy. [Appellant] entered a plea of guilty to third degree murder, possession of a firearm without a license and criminal conspiracy on November 15, 2010. In accordance with the plea agreement reached between the Commonwealth and [Appellant], he was sentenced to a period of incarceration of not less than fifteen nor more than thirty years for his plea to third-degree murder and no further penalty was imposed at the remaining counts. [Appellant] did not file any post-sentence motions, nor did he file a direct appeal.

On September 29, 2011, [Appellant] filed his *pro se* petition for post-conviction relief and [counsel] was appointed to represent him in connection with that proceeding. On December 30, 2011, [counsel] filed a motion to withdraw as counsel and also prepared a ***Turner/Finley***[3]no merit letter after examining the record concluding that there were no meritorious issues that could be raised on [Appellant's] behalf. On January 9, 2012, this [c]ourt granted [counsel's] motion to withdraw and issued a notice of intent to dismiss [Appellant's] petition. On January 9, 2012, a notice of [intent] to dismiss [Appellant's] petition was filed and that petition was, in fact, dismissed on July 17, 2012. On August 22, 2012, [Appellant] filed a *pro se* notice of appeal to the Superior Court and that notice of appeal was amended on

---

[2] The accurate name of the individual referenced in Appellant's petition, the certified record, and the PCRA court opinion is "Natale **Coaston**."

[3] ***Commonwealth v. Turner***, 518 Pa. 491, 544 A.2d 927 (1988) and ***Commonwealth v. Finley***, 550 A.2d 213 (Pa.Super. 1988) (*en banc*).

October 3, 2012. This [c]ourt directed [Appellant] to file a concise statement of [errors] complained of on appeal on October 26, 2012, however, [Appellant] never filed such a [statement]. Accordingly, this [c]ourt filed an Opinion on January 16, 2013, indicating that [Appellant's] failure to file a concise statement resulted in a waiver of all of his claims in connection with his petition for post-conviction relief act appeal. On July 24, 2013, the Superior Court affirmed…since it believed that all issues on appeal had been waived by the failure to file a concise statement. On March 17, 2014, [Appellant] filed the second [*pro se*] petition for post-conviction relief and [new counsel] was appointed to represent him. On May 21, 2015, [counsel] filed an amended petition for post-conviction relief.

A hearing on [Appellant's] petition for post-conviction relief was held on December 10, 2015, at which hearing only [Appellant] testified despite the fact that his petition for post-conviction relief was based upon a claim of after-discovered evidence[4] of the purported testimony of Natale

_____

[4] The substantive claim of after-discovered evidence and the new-facts exception to the PCRA timeliness requirements are often conflated and referred to as the same theory of relief. These concepts, however, are not interchangeable and require different proofs. Under the new-facts exception to an untimely PCRA petition, petitioner must establish "the **facts** upon which the claim was predicated were **unknown** and…could not have been ascertained by the exercise of **due diligence**. If the petitioner alleges and proves these two components, then the PCRA court has jurisdiction over the claim under this subsection." ***Commonwealth v. Bennett***, 593 Pa. 382, 395, 930 A.2d 1264, 1271 (2007). Only if a petitioner meets the statutory jurisdictional requirements by satisfying this exception to the PCRA time-bar, can he then argue for relief on a substantive after-discovered-evidence claim, which requires the petitioner to demonstrate: (1) the evidence has been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict. ***See, e.g., Commonwealth v. Washington***, 592 Pa. 698, 927 A.2d 586 (2007); ***Commonwealth v. D'Amato***, 579 Pa. 490, 856 A.2d 806 (2004). The substantive merits-based analysis of an after-discovered evidence claim is more rigorous than the initial analysis required to establish

- 3 -

[Coaston]. A hearing had been scheduled earlier, however, it was continued since [Coaston] did not appear at the hearing despite the fact that he had been subpoenaed and got notice of the hearing date. As a result of [Coaston] not appearing at the December 10, 2015 hearing, this [c]ourt denied [Appellant's] petition on January 13, 2016.

[Appellant] filed a *pro se* appeal, which was amended by [counsel].[5] [Appellant] was directed to file a concise statement of [errors] complained of on appeal on February 8, 2016 and on August 18, 2016, [counsel] filed a motion of intent to withdraw which required that a **Grazier** Hearing[6] be held. That hearing was held and [Appellant's] current appellate counsel was appointed to represent him in connection with this appeal. [Appellant] filed his concise statement of [errors] complained of on appeal on July 21, 2017, in which he raised one claim of error, that being that this [c]ourt erred in denying his petition since the affidavit of [Coaston] should have sufficed despite the fact that he did not provide the testimony that [Appellant] had alleged that he would in his petition for post-conviction relief.

(*Id.* at 1-4). Appellate counsel filed with this Court a petition to withdraw representation and a brief, designated as a brief under **Anders v. California**, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

"Before an attorney can be permitted to withdraw from representing a

_____

the court's jurisdiction under the "new-facts" exception. **See Bennett, supra** at 395-96, 930 A.2d at 1271-72.

[5] The certified record confirms Appellant timely filed his *pro se* appeal on February 8, 2016, under the prisoner mailbox rule, notwithstanding the delayed, formal docketing date of that notice of appeal. **See Commonwealth v. Chambers**, 35 A.3d 34 (Pa.Super. 2011), *appeal denied*, 616 Pa. 625, 46 A.3d 715 (2012) (explaining prisoner mailbox rule allows court to consider document as filed on date *pro se* prisoner delivers it to prison authorities for mailing).

[6] **Commonwealth v. Grazier**, 552 Pa. 9, 713 A.2d 81 (1998).

petitioner **under the PCRA**, Pennsylvania law requires counsel to file and obtain approval of a 'no-merit' letter pursuant to the mandates of ***Turner*/*Finley*."  ***Commonwealth v. Karanicolas***, 836 A.2d 940, 947 (Pa.Super. 2003) (emphasis in original).

> [C]ounsel must…submit a "no-merit" letter to the trial court, or brief on appeal to this Court, detailing the nature and extent of counsel's diligent review of the case, listing the issues which the petitioner wants to have reviewed, explaining why and how those issues lack merit, and requesting permission to withdraw.

***Commonwealth v. Wrecks***, 931 A.2d 717, 721 (Pa.Super. 2007).  Counsel must also send to the petitioner a copy of the "no-merit" letter or brief and petition to withdraw and advise the petitioner of his right to proceed *pro se* or with new counsel.  ***Id.***

Instantly, counsel filed a ***Turner*/*Finley*** brief on appeal (even though counsel designated it as an ***Anders*** brief) and a petition to withdraw as counsel.[7]  Counsel listed the issue Appellant wished to raise and explained why the issue merits no relief.  In counsel's corrected amended petition to withdraw, counsel states that she sent Appellant another copy of the brief, a

---

[7] In the context of a PCRA petition and request to withdraw, the appropriate filing is a "no-merit" letter/brief. ***See Turner, supra***; ***Finley, supra***. ***But see Commonwealth v. Fusselman***, 866 A.2d 1109, 1111 n.3 (Pa.Super. 2004), *appeal denied*, 584 Pa. 691, 882 A.2d 477 (2005) (stating Superior Court can accept ***Anders*** brief in *lieu* of ***Turner*/*Finley*** letter, where PCRA counsel seeks to withdraw on PCRA appeal).  Instantly, counsel incorrectly designated the brief filed on appeal as an ***Anders*** brief.  Although it has some attributes of an ***Anders*** brief, we will treat it as a ***Turner*/*Finley*** brief.

copy of the amended petition to withdraw, and a corrected letter advising Appellant of his right to proceed immediately *pro se* or with private counsel to raise additional points he deems worthy of review. Thus, appellate counsel has now substantially complied with the **Turner**/**Finley** requirements. **See Karanicolas, supra**. Accordingly, we proceed to an independent evaluation. **See Turner, supra** at 494-95, 544 A.2d at 928-29 (stating appellate court must conduct independent analysis and agree with counsel that appeal is frivolous). Appellant has not responded to counsel's petition.

Appellant raises one issue in the **Turner/Finley** brief:

DID THE [PCRA] COURT ERR IN DENYING RELIEF UPON FINDING THAT IT LACKED JURSIDCTION OVER [APPELLANT'S] SECOND PCRA PETITION INSOFAR AS IT WAS UNTIMELY, AND THE "NEWLY DISCOVERED FACT" EXCEPTION ENUMERATED IN 42 PA.C.S. § 9545(B)(1)(II) DOES NOT APPLY?

(**Turner/Finley** Brief at 5).

As a prefatory matter, the timeliness of a PCRA petition is a jurisdictional requisite. **Commonwealth v. Hackett**, 598 Pa. 350, 956 A.2d 978 (2008), *cert. denied*, 528 U.S. 1163, 129 S.Ct. 2772, 174 L.Ed.2d 277 (2009). Pennsylvania law makes clear no court has jurisdiction to hear an untimely PCRA petition. **Commonwealth v. Robinson**, 575 Pa. 500, 508, 837 A.2d 1157, 1161 (2003). The PCRA requires a petition, including a second or subsequent petition, to be filed within one year of the date the underlying judgment becomes final. 42 Pa.C.S.A. § 9545(b)(1). A judgment of sentence is final "at the conclusion of direct review, including discretionary review in

the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking review." 42 Pa.C.S.A. § 9545(b)(3).

Generally, to obtain merits review of a PCRA petition filed more than one year after the sentence became final; the petitioner must allege and prove at least one of the three timeliness exceptions. *See* 42 Pa.C.S.A. § 9545(b)(1)(i)-(iii). The petitioner must allege and prove:

> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
>
> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
>
> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S.A. § 9545(b)(1)(i)-(iii). "[W]hen a PCRA petition is not filed within one year of the expiration of direct review, or not eligible for one of the three limited exceptions, or entitled to one of the exceptions, but not filed within 60 days of the date that the claim could have been first brought, the trial court has no power to address the substantive merits of a petitioner's PCRA claims." *Commonwealth v. Gamboa-Taylor*, 562 Pa. 70, 77, 753 A.2d 780, 783 (2000).

- 7 -

Instantly, in accordance with the plea agreement reached between the Commonwealth and Appellant, the court sentenced him on November 15, 2010, to fifteen to thirty years for third-degree murder and imposed no further penalty at the remaining counts. Appellant did not file any post-sentence motions or a direct appeal, so the judgment of sentence became final thirty days later, on or about December 15, 2010. *See* 42 Pa.C.S.A. § 9545(b)(3); Pa.R.A.P. 903(c)(3). Thus, Appellant had until December 15, 2011 to file a PCRA petition. Appellant timely pursued a first PCRA petition on September 29, 2011, which was eventually denied on July 17, 2012. This Court affirmed on July 24, 2013. *See Commonwealth v. Burks*, 82 A.3d 1077 (Pa.Super. 2013) (unpublished memorandum). Appellant sought no further review.

Appellant filed his second and current PCRA petition on March 17, 2014, which was over two years late and untimely on its face. *See* 42 Pa.C.S.A. § 9545(b)(1). Appointed counsel filed an amended petition on May 21. 2015. Appellant attempted to invoke the new-facts exception to the PCRA time bar with affidavits from Natale Coaston. Appellant now claims on appeal that he pled and proved the new-facts exception to the PCRA time bar, solely with the signed affidavits from Mr. Coaston, who did not appear to testify at the PCRA hearing. Appellant suggests the affidavits constituted sufficient competent evidence to establish he is innocent and deserves a new trial. We disagree.

In response to Appellant's issue, the PCRA court reasoned:

> The basis for [Appellant's] claim that he has newly-discovered facts based upon his due diligence, is an affidavit

- 8 -

purportedly executed by [Coaston] in which he states that he was present at the shooting and that Donald Johnson and not [Appellant] was the shooter. [Appellant] maintains that he could not have obtained that exculpatory information before [Coaston] submitted his affidavit because [Coaston] refused to testify at the time of trial and that he had been afraid to testify because he and his family had been threatened. Since his incarceration he has been rehabilitated and he was willing to set the record straight. This contention conveniently ignores the fact that [Appellant] and [Coaston] were cellmates for more than seven months and there was never a mention of [Coaston's] testimony. A hearing was held on [Appellant's] petition for post-conviction relief at which only [Appellant] testified and [Coaston] failed to appear despite the fact that a lawyer had been appointed for him. [Coaston] had been subpoenaed for the first hearing date and did not appear and was subpoenaed for the second hearing date and provided notice of that hearing and still did not appear.

[…] [Appellant] has failed to meet his burden since he never proved that [Coaston] had exculpatory information which would identify someone else as the shooter. It should be noted that [Appellant] knew of [Coaston's] existence since [Coaston] was mentioned in the recital of the facts in [Appellant's] case at the time that he entered his plea and that [Coaston] was the individual from whom the murder weapon was recovered. Coupled with the fact that they were cellmates for more than seven months, [Appellant] had more than ample opportunity to discuss his case with [Coaston] and acquire that information. The fact that [Coaston] was subpoenaed and notified of two different hearing dates for [Appellant's] petition for post-conviction relief and ignored those subpoenas and failed to appear, clearly demonstrates that [Appellant] did not meet his burden of proving his claim and, accordingly, this [c]ourt dismissed his petition following that hearing.

(PCRA Court Opinion at 6-8). Our independent examination of the certified record makes clear Appellant actually offered three somewhat different affidavits, purportedly from Mr. Coaston, as exhibits to his PCRA filings. The

first document, titled as an "unsworn affidavit," from Mr. Coaston is dated November 23, 2014, and somehow attached to Appellant's *pro se* petition that he filed eight months earlier on March 17, 2014. In addition to the discrepancy in the dates, this initial affidavit from Mr. Coaston states **he** was the shooter involved in the killing of Mr. Nelson; Mr. Coaston was arrested with the gun he used in the shooting; and Appellant was not involved with the homicide.

The second affidavit from Mr. Coaston is attached as an exhibit to Appellant's counseled amended PCRA petition. In the second affidavit, Mr. Coaston states: he withheld information about his involvement in the shooting and killing of Mr. Nelson; Mr. Coaston was arrested with the gun used in the homicide; he can no longer live his life knowing he let his silence hurt two families; Appellant had no involvement with the homicide; and Mr. Coaston is willing to testify to the affidavit and take responsibility as he deserves. The second affidavit is dated February 11, 2014 and closely predates Appellant's March 17, 2014 *pro se* petition.

The third affidavit from Mr. Coaston is dated December 2, 2014, and is also attached as an exhibit to Appellant's counseled amended PCRA petition. In the last affidavit, Mr. Coaston declares: the person who shot and killed Mr. Nelson was not Appellant, it was Donald Johnson; the reason Mr. Coaston did not come forward sooner with this information was due to threats made against him and his family by Mr. Johnson; Mr. Coaston was willing to testify to these facts under oath; and he was executing this affidavit on his own free

will, without threats, promises, or coercion.

The purpose of the PCRA hearing was to determine if Appellant had satisfied the new-facts exception to the statutory time-bar. Given these varying affidavits, Mr. Coaston's testimony at the PCRA hearing was essential. The PCRA court even appointed counsel for Mr. Coaston and rescheduled the first hearing when Mr. Coaston failed to appear. Despite subpoenas and notices of the hearing dates, Mr. Coaston did not show up to testify on behalf of Appellant, which deprived the Commonwealth and the PCRA court of the opportunity to test and assess Mr. Coaston's reliability and credibility. Contrary to Appellant's position, the affidavits alone were not self-proving.

Moreover, other evidence of record called into question Appellant's due diligence, where Appellant knew at the time of his guilty plea the identity of Mr. Coaston and that he had been found with the murder weapon. Appellant also shared a cell with Mr. Coaston for about seven months during the year before Mr. Coaston first issued his alleged affidavits. Appellant offered no explanation for the lapse of time before he managed to obtain the affidavits Appellant now claims exonerate him. Therefore, Appellant was unable to sustain the statutory new-facts exception; and his petition remained time-barred. Accordingly, we affirm the order that dismissed Appellant's second petition as untimely and grant counsel's petition to withdraw.

Order affirmed; petition to withdraw is granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  9/19/2018